NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---

SHARON MONTGOMERY,

               Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

               Defendant.

Civil No. 17-0770 (RBK)

**OPINION**

---

**KUGLER**, United States District Judge:

This matter comes before the Court upon the appeal of Sharon Montgomery ("Plaintiff") for review of the final determination of Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"). The Commissioner denied Montgomery's application for Social Security Income ("SSI") benefits. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

**I.    BACKGROUND**

    **A. Plaintiff's Background**

Plaintiff was born in March, 1965. (Tr. 277). She was 48 years old when she applied for SSI. (Tr. 35, 83). She was therefore a person "closely approaching advanced age" under the Agency's age categories by the time of the Administrative Law Judge's ("ALJ") decision. (Tr. 35, 175); 20 C.F.R. § 416.963(c), (d).

1

Plaintiff completed the eleventh grade, but took exclusively special education classes while in school. (Tr. 35, 188). Plaintiff maintains that she has no past relevant work, but she did work as a bus aide and housekeeper. (Tr. 23, 36-38, 178-79, 188, 195-96).

Plaintiff lived in an apartment with her adult son. (Tr. 35, 203). She cared for most of her own personal needs; prepared meals daily; cleaned; washed laundry; and swept. (Tr. 46-47, 204). She ventured outside, attended church, used public transport, shopped in stores, and could go out alone. (Tr. 206-07). She spent her time watching television, playing card games, playing bingo, and reading.[1] (Tr. 44-46, 206). Plaintiff also admitted that she could pay her own bills, handle her own savings account, take her own medicine and care for herself, and did not have problems with memory, completing tasks, concentrating, following instructions, or getting along with others. (Tr. 205-09). Plaintiff states that she can follow both written and spoken instructions "very well," and get along with authority figures "good." (Tr. 208-09).

Nevertheless, Plaintiff claims to suffer from extremely low intelligence; mild mental retardation; a learning disorder; chronic low back pain with a transitional vertebra; chronic pancreatitis; a flexion contracture in the right fifth digit; and obesity. (Tr. 16, 244, 250, 353, 357, 397, 400).

**B. Relevant Medical Evidence**

**Lewis Lazarus, Ph.D.**

In July 2013, Plaintiff underwent intelligence testing and a psychological consultative examination with Lewis A. Lazarus, Ph.D. (Tr. 352-53). Dr. Lazarus opined that Plaintiff had a full scale IQ score of 57; a verbal IQ score of 58; a perceptual reasoning score of 69; and a

---

[1] Plaintiff can read and understand English, and she completed the paperwork for her disability claim without assistance. (Tr. 43-44, 186-87, 202-10).

working memory score of 63. (Tr. 352). Dr. Lazarus assessed Plaintiff with extremely low intelligence; a significantly limited fund of knowledge; significant limitation in expressive vocabulary skills with difficulty reading; significantly limited abstract verbal reasoning abilities; moderately impaired nonverbal reasoning and concept formation skills; and severely limited arithmetic, visual scanning, and graphomotor speed skills. (Tr. 352). Dr. Lazarus diagnosed Plaintiff with mild mental retardation or borderline intellectual functioning; learning disorder, not otherwise specified ("NOS"); and noted a rule out diagnosis of reading disorder. (Tr. 353). Dr. Lazarus also assessed Plaintiff with a Global Assessment of Functioning ("GAF") Score of 49. (Tr. 353); *see Diagnostic and Statistical Manual for Mental Disorders* 34 (4th ed., text rev., 2000).

**Wayne Tillman, Ph.D., and Richard Filippone, Ph.D.**

State agency mental health consultants, Wayne Tillman, Ph.D., and Richard Filippone, Ph.D., reviewed Plaintiff's claim at the initial and reconsideration levels of administrative review in September 2013 and November 2013, respectively. (Tr. 91-93, 104-06). Both opined that the record supported a diagnoses of learning disorder and borderline intellectual functioning. (Tr. 93, 106). They reported marked limitations in understand, remembering, and carrying out detailed instructions; moderate limitations in maintaining attention and concentration for extended periods; and moderate limitations in maintaining regular attendance, performing within a schedule, and being punctual. (Tr. 92-105). Despite Plaintiff's documented low IQ scores, Drs. Tillman and Filippone determined that Plaintiff could understand and execute simple instructions; maintain concentration, persistence, or pace; maintain attendance standards; and adequately relate and adapt in work-like settings. (*Id.*).

**Vocational Expert**

The ALJ asked an impartial vocational expert ("VE") whether there was work in the national economy for a person of Plaintiff's age, education, and work experience who could perform light work involving frequent fingering with the right dominant upper extremity; frequent bending, stooping, crouching, and crawling; understanding, remembering, and carrying out only simple instructions; making only simple work-related decisions; and adapting to only routine changes in the work environment. (Tr. 56). The VE testified that such a person could perform a significant number of light, unskilled jobs. (Tr. 57). The VE identified potential examples: assembler of small products (1.6 million national jobs), compression-molding machine tender (1.45 million national jobs), and marking clerk (200,000 national jobs).[2] (Tr. 57).

**Subsequent School Record Evidence**

Counsel for Plaintiff submitted school records to the Appeals Council after the ALJ's decision. (Tr. 242-43, 426-33). In these records, Plaintiff's school psychologist, Harold I. Goodman, noted in March 1972 that Plaintiff "seem[ed] very slow" and was "unable to perform at her chronological level." (Tr. 426). He opined that she functioned in the borderline intelligence range and recommended she be placed in a special educational setting. (Tr. 427). When Plaintiff was seven years old, she was tested for her performance IQ and received a score of 68. (Tr. 426).

**C. The ALJ's Decision**

The ALJ evaluated Plaintiff's claim under the five-step sequential evaluation process. 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff did not have substantial gainful

---

[2] The VE explained that this testimony differed from the Dictionary of Occupational Titles ("DOT") in absenteeism and the job duties of an addressing clerk, but was otherwise consistent with the DOT. (Tr. 58-59).

4

activity. (Tr. 16). At step two, the ALJ concluded that Plaintiff suffered from the following severe impairments: (1) mild mental retardation/learning disorder NOS; (2) chronic low back pain/transitional vertebra; (3) peptic ulcer disease; (4) chronic pancreatitis; (5) flexion contractures of the right fifth digit of her hand; and (6) obesity. (Tr. 16). At step three, the ALJ decided that Plaintiff did not meet or equal the severity of any presumptively disabling listing impairment, including Listing 12.05, and determined that Plaintiff's history of special education was not itself conclusive and that her low IQ scores were inconsequential because intelligence testing was not completed before age 22. (Tr. 17-18). The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work with certain restrictions.[3] (Tr. 19-23). At step four, the ALJ found Plaintiff had no past relevant work. (Tr. 19-23). At step five, based on this RFC, Plaintiff's age, education, work experience, and the VE's testimony, the ALJ found that Plaintiff could perform certain unskilled work in the national economy and was thus not disabled. (Tr. 23-24, 56-57).

**D. Plaintiff's Appeal**

Plaintiff appeals this decision on two grounds. First, that the ALJ erred in finding that Plaintiff's impairments did not meet or equal listings 12.05B and 12.05C because her IQ scores, severe impairments, and adaptive deficits satisfied both of these listings' criteria. Second, that the ALJ erred when the ALJ assessed Plaintiff capable of performing jobs that were precluded by the ALJ's own findings and the medical opinions of record. We review these arguments in turn.

**II.    STANDARD OF REVIEW**

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence after reviewing the administrative

---

[3] The restrictions described to the VE.

record as a whole. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). The often-used quotation for the standard is that substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g., Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III. DISCUSSION

### A. ALJ did not err in finding that Plaintiff's impairments did not meet or equal listings 12.05B and 12.05C.[4]

Listing 12.05 requires a full scale IQ score of 70 or below[5] *and* that Plaintiff exhibit "[s]ignficant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05B. Evidence of both the intellectual and adaptive functioning issues must "support[] the conclusion that the disorder began prior to . . . age 22." *Id.* A claimant must show that all of the criteria for a listing have been met, and an impairment that meets only some of the criteria, "no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 530, 532 (1990). The claimant bears the burden at this step. 20 C.F.R. § 416.926; *Zebley*, 493 U.S. at 531.

"Adaptive functioning" means "how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background." *See Diagnostic and Statistical Manual of Mental Disorders (DSM-V)* 37 (5th ed. 2013). Deficits in adaptive functioning are evaluated in many areas—these include communication, self-care, home living, social skills, academic skills,[6] work, and more. *Id.*

The ALJ reasonably determined that the Plaintiff failed to establish deficits in adaptive functioning prior to age 22. (Tr. 17-20). The ALJ wrote that Plaintiff undertook a number of daily activities, cared for her personal needs independently, prepared her own meals, performed

---

[4] The Court notes that listing 12.05C has been cut and no longer constitutes a listing. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. This does not change our analysis.

[5] Or a full scale IQ score of 71-75 accompanied by a verbal or performance IQ score of 70 or below. *Id.*

[6] Failure to graduate from high school or attain a GED do not necessarily establish academic deficits in adaptive functioning. *Peterson v. Comm'r of Soc. Sec.*, 552 App'x 533, 540 (6th Cir. 2014) (Peterson did not demonstrate the requisite deficits despite only reading at a fifth grade level).

housework including cleaning and laundry, went outside alone, used public transit, shopped in stores, played card games and bingo, read newspapers and magazines, attended church, and spent time in the park. (Tr. 18, 20, 44-48, 204, 206-07). The ALJ discussed Plaintiff's other self-reported abilities: Plaintiff stated that she did not need reminders to take her medicine, go places, or care for her personal needs and could pay bills herself. (Tr. 18, 20, 205, 207). She had no problems with memory, completing tasks, concentrating, following instructions, and getting along with others. (Tr. 208). Drs. Tilliman and Filippone also did not believe that her impairments satisfied a listed impairment. (Tr. 91-93, 104-106).

In short, the ALJ had the required substantial evidence for her decision, and we cannot overturn an ALJ's decision that is supported by substantial evidence. *Fargnoli*, 247 F.3d at 38. The evidence in the record is adequate enough to support the ALJ's decision, and as such it must be affirmed.[7] *Morales*, 225 F.3d at 316.

### B. The ALJ Did Not Err In Determining Plaintiff Was Capable Of Performing The Jobs Discussed.

Plaintiff contends that the ALJ committed legal error in relying on vocational evidence that conflicts with the *Dictionary of Occupational Titles* (*Dep't of Labor*, 4th ed., 1991) and thus remand is warranted. Plaintiff argues that there was an unresolved conflict between the VE's

---

[7] Plaintiff's school records do not change this analysis. (Pl. Br. at 6). They were submitted to the Appeals Council after the ALJ's decision—for purposes of this Court's review, the record is closed at the ALJ's level. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001). This Court may consider evidence submitted to the Appeals Council if it is new and material, but there must be good cause for failing to submit the evidence to the ALJ. *Id.* (citing 42 U.S.C. § 405(g)). Plaintiff has not offered any evidence that these records are new or offered good cause for her failure to produce them earlier. (*See* Pl. Rep. at 3 (arguing, without citation or a reasonable basis for doing so, that the ALJ did not "fulfill[] his duty" because the ALJ did not unilaterally discover school records from the 1970s). As such, these records will not be considered. The Court does note that the materiality of these records is also disputed—it is *far* from clear that they would affect the outcome of this case in any way.

8

testimony and the DOT because the jobs identified by the VE have a General Educational Development reasoning level of two. Accordingly, Plaintiff maintains, the ALJ's finding was not supported by substantial evidence. (*See* Pl. Br. at 11-12).

At step five, the Commissioner must produce evidence that a claimant, even with his or her limitations, can perform a significant number of jobs in the national economy. 20 C.F.R. § 416.960(c)(2). In making such a finding, an ALJ can rely on VE testimony. *Id.* at 416.966(e). If there is a conflict between VE testimony and the DOT, the ALJ must ask about the conflict and obtain a reasonable explanation for the conflict. SSR 00-4p, 2000 WL 18987054, at *4; *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002).

In this case, the ALJ asked the VE—for the purposes of the VE's analysis—to assume a person of Plaintiff's age, education, and work experience who could perform light work involving the hindrances the ALJ determined Plaintiff suffered from. (Tr. 56). The VE testified that a person with those limitations could perform a number of jobs in the national economy, including working as an assembler of small products, a compression-molding machine tender, or a marking clerk (3.25 million combined national jobs). (Tr. 57). The ALJ then asked the VE whether such testimony conflicted with the DOT. (Tr. 58). The VE said it did—in two respects— and explained how and why, but stated that the testimony was otherwise in line with DOT. (Tr. 58-59). The ALJ then relied on the VE's testimony and denied benefits to Plaintiff.

Plaintiff contends that the ALJ needed an explanation from the VE as to how the identified jobs—all with a DOT reasoning level of two, and thus allegedly beyond Plaintiff's mental abilities—comported with Plaintiff's deficiencies. (Pl. Br. 11-12). But Third Circuit precedent has established that level two jobs do not outright conflict with a requirement for simple, routine, and repetitive work. *Money v. Barnhart*, 91 F. App'x 210, 214 (3d Cir. 2004)

9

(Level two work does "not contradict the mandate that [the plaintiff's] work be simple, routine and repetitive"); *see Tollivers v. Astrue*, No. 11-6358 (WJM), 2013 WL 42709 (D.N.J. Feb. 1, 2013) (there is no conflict between GED reasoning level two and unskilled work). As such, there is no such issue in this case. The ALJ's reliance on the VE's testimony was inherently reasonable.

IV. **CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.


Dated: _03/14/2017__                              __s/Robert B. Kugler_
                                                  ROBERT B. KUGLER
                                                  United States District Judge